**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.:**

**LADI MARCH GOLDWIRE,**

  **Plaintiff,**

**vs.**

**CITY OF RIVIERA BEACH,**

  **Defendant.**

_____/

## COMPLAINT

 Plaintiff, LADI MARCH GOLDWIRE ("Plaintiff") by and through the undersigned counsel hereby sues Defendant, CITY OF RIVIERA BEACH ("Defendant" or "the City") and alleges:

## JUSRISDICTION AND VENUE

 1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); 42 U.S.C. §1983 ("Section 1983"); and, the Equal Pay Act of 1963 ("EPA"), 52 Stat. 1062, as amended, 29 U.S.C. §206(d) *et seq*.

 2. Jurisdiction and venue is proper because the acts complained of occurred within this judicial district and because the Defendant's principal place of business is within the district.

## PARTIES

 3. Plaintiff is an African-American female and is a resident of Palm Beach County, Florida.

 4. Plaintiff, at all times relevant, was an "employee" of the Defendant as defined by Title VII, Section 1983 and the EPA.

5.   Defendant is a City within the State of Florida that employs more than 15 employees and was Plaintiff's employer within the meaning of Title VII.

6.   At all relevant times, the Defendant was an employer within the meaning of 29 U.S.C. §203(d), employing more than 50 employees, within the meaning of 29 U.S.C. §203(e)(2)(C).

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

7.   On or about August 18, 2017, Plaintiff dual-filed a charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") and the Palm Beach County Office of Equal Opportunity ("PBCOEO").   **See Plaintiff's Charge of Discrimination attached as Exhibit "A."**

8.   Following the investigation Plaintiff's Charge of Discrimination was transferred to the U.S. Department of Justice, Civil Rights Division ("DOJ") following

9.   The DOJ issued a Notice of Right to Sue for both Charges of Discrimination on June 22, 2018, which was received by Plaintiff on or about July 5, 2018. **See Notice of Right to Sue attached as Exhibit "B."**

10. All conditions precedent to filing suit have been met or have been waived.

11. All administrative perquisites to filing suit have been met or have been waived.

12. The PBCOEO and EEOC investigated and took action on this matter pursuant to the Florida Civil Rights Act and the work-sharing agreement between the EEOC and PBCOEO.

## FACTUAL ALLEGATIONS

13.  Between October and November 2016, Plaintiff applied and interviewed with Terrence Bailey (then Community Development Director); DeAndre Spradley (Senior Planner); and Danny Jones (Acting City Manager), for the position of Building Official for Defendant.

14.  Plaintiff was offered the position of Building Official and given a total compensation package of $75, 889.37 per year.

15. Previous Building Officials for Defendant were paid more than Plaintiff. Upon information and belief former Building Officials Peter Ringle and Gill Vetter made approximately $90,504.96 per year; Kenneth Loihl made approximately $104,108.16 per year. These figures were not the total compensation for these individuals.

16. Alfred Newbold who was the Building Official from the 1970's to mid 1980's made approximately $33,420.00; the current equivalent of that salary would be approximately $106,066.82 today.

17. Plaintiff had more or equal experience than the above listed male Building Officials.

18. Plaintiff was promised an increase of 10% of her base upon receiving one of three full Building Official licenses, *i.e.*, provisional, limited, or standard.

19. To date, Plaintiff has not been provided with this increase despite the fact that she was granted her provisional license on April 22, 2017.

20. Plaintiff is the only person in the role of Building Official or similar role who has been denied above base pay increase.

21. Upon her hire, Mr. Bailey, Mr. Spradley and Mr. Jones ensured Plaintiff that she could retain her current licensees and associative businesses so long as she did not work privately within the Riviera Beach.

22. Plaintiff was also informed that she would be allowed to appoint a Deputy Building Official to assist her with her duties. To date, Plaintiff has not been allowed to hire a permanent person to fill this role.

23. Plaintiff officially commenced her employment with Defendant on January 11, 2017.

24.  Upon her hire, Defendant's Human Resources Representative Fran Zuniga, informed Plaintiff that she would not be permitted to use her maiden name.  Plaintiff objected and explained that all of her qualifying licenses were obtained in her maiden name.

25.  Two days before she commenced her employment, Plaintiff received a call from DeAndre Spradley advising her that the office, which belonged to the Building Official for the last 20 years and which was located in the center of the department, was being relocated. Mr. Spradley indicated that newly appointed Department Director, Terrance Bailey, moved him (Mr. Spradley) into that office and that he was uncomfortable with that decision.

26.  On her first day, Mr. Bailey walked Plaintiff around for introductions.  During these introductions Mr. Bailey made several derogatory comments regarding female office staff.

27.  For example, when Plaintiff asked how many City Attorneys were employed by the Defendant, Mr. Bailey replied "one and a half" referring to the female attorney as a "half." Paralegals Kerry Ramatour and Sheila James witnessed this exchange.

28.  At the end of January 2017, Acting City Manager requested that Plaintiff review the CAP government billing and curtail unnecessary spending as it pertained to their contract. CAP Government is a third party private inspection provider company owned by Carlos A. Penin.

29.  As Plaintiff reviewed the CAP billing, she noticed that revenues, via building permits, coming into the Building Department was being redirected to a general fund.  This is not a recommended practice and the Florida Statutes (§553.80) imply that funds collected from building permit revenue be deposited in an enterprise fund.

30.  Plaintiff also began questioning fees charged and collected on large development projects.  For example:

      a.  Amrit Health and Wellness Resort understated the valuation of its project at $49,000,000.00 when it should have been $375,000,000.00;

     b.  Palm Beach Cold Storage understated its project value at $2,000,000.00 when it should have been $4,000,000.00;

     c.  Arbor Par/Mediterranean proposed a project at $40.00 per square foot when it should have been a minimum of $80.00 per square foot; and,

     d.  Blue Heron Estates attempted to obtain permits without remittance of fees.

31. Plaintiff also confirmed by early February 2017, that Palm Beach Cold Storage, one of the largest developments in the City had begun and completed 90% of construction without procuring any permits.

32. Plaintiff further discovered the projects listed in paragraph 26, which were already underway in the City, were not being charged for work done and within the associated values within the City.

33. Plaintiff sought assistance in remedying these issues from Bruce Davis and Danny Jones, the former City Manager.  She was met with staunch resistance.

34. On March 10, 2017, CAP Government initiated and signed a Stop Work Order on the Palm Beach Cold Storage project that Plaintiff supported.

35. Defendant's management team was not happy with the Stop Work Order or the manner in which Plaintiff chose to remedy the Building Code violations and began to retaliate against Plaintiff.

36. Danny Jones and Bruce Davis directed Terrance Bailey to "ream in" Plaintiff.

37. In March 2017, shortly after the Stop Work Order was instituted against Palm Beach Cold Storage, Plaintiff was given a reprimand for using a City vehicle as a take home car even though she was considered emergency personnel; her sick leave was denied and Defendant began attempting to enforce an outside work employment policy for which Plaintiff had previously been

exempted.  Upon information and belief, Human Resources Director, Bruce Davis, initiated the above listed actions.

38.  New City Manager Jonathan Evans asked Plaintiff to reduce the fines and fees levied against Palm Beach Cold Storage.

39.  Human Resources Director, Bruce Davis began questioning all of Plaintiff's work endeavors outside of the City, despite the fact that Plaintiff had received this accommodation at the beginning of her employment.

40.  Bruce Davis then questioned all persons who could attest to the agreement made with Plaintiff.  One of those persons was DeAndre Spradley.

41.  Mr. Spradley verified the exemption given to Plaintiff and he was eventually terminated because he made it clear that he recalled the exemption given to Plaintiff.

42.  At a departmental meeting, Mr. Davis admitted that he was scrutinizing Plaintiff's employment file and despite being aware of the exemption given to Plaintiff, he insisted that Plaintiff complete and sign the Defendant's Outside Work Employment Agreement.  Plaintiff refused.

43.  Plaintiff then filed an internal complaint of hostile work environment against Defendant that included complaints against Bruce Davis.  Mr. Davis and Human Resources Eureka Irvin held a meeting to allegedly investigate the claims, however, to date, that investigation has not been completed.

44.  Shortly after her internal complaint was filed, Plaintiff began receiving emails from other municipalities and the State Licensing Board regarding her license.

45.  In retaliation for her fines and fees, Palm Beach Cold Storage, with the assistance of certain of Defendant's councilmen began seeking a revocation of Plaintiff's state licenses.

46.  In July 2017, Plaintiff formerly contacted the PBCOEO to file a formal charge of discrimination.

47.  Plaintiff learned that Mr. Evans became aware of her complaints and asked Bruce Davis to investigate her complaint; despite the fact that Mr. Davis was again implicated in Plaintiff's complaint.

48.  In August 2017, as Plaintiff continued to pursue uncollected revenues and investigate misrepresentations on applications presented by the City, duties she was responsible for as the Building Official; Defendant increased its scrutiny of Plaintiff.

49.  Plaintiff questioned City Manager Jonathan Evans, about the mishandling of the Stonybrooks residents, Palm Beach Cold Storage and Amrit Health and Wellness Resort.  Plaintiff then implemented fees and/or penalties to the developers' non-compliance with the Building Code.

50.  The developers for the above mentioned projects were not pleased that Plaintiff was actually implementing the Building Code and requesting that they pay the appropriate permit fees for their projects.

51.  These developers subsequently attempted to use their influence on certain of Defendant's employees to curtail Plaintiff's performance of her job duties.

52.  These developers also filed lawsuits against Plaintiff, for which Defendant was required to provide a defense.

53.  During this time, the media mercilessly pursued Plaintiff, including but not limited to local news reporter Wanda Moore, who reported false stories about Plaintiff and her qualifications to be a Building Officer.

54.  Social media attacks were also aimed at Plaintiff and her personnel file was placed on to Facebook.

55. Defendant did not take any steps to protect Plaintiff's reputation and/or support her against these allegations.

56. On September 25, 2017, Mr. Evans, provided testimony to the State Attorney's Office ("SAO") regarding his belief that Plaintiff was not qualified for the position of Building Official.

57. In November 2017, Councilwoman Dawn Pardo, informed Plaintiff that she had been approached at a gathering wherein she was told that Plaintiff "needed to go." Councilwoman Pardo informed Plaintiff was being pursued at the highest level to have her credentials revoked.

58. On April 26, 2018, an information signed by Daniel Reiter, Esq. of the SAO was filed and sent to Plaintiff's attorney, Michael Cunningham. The information, for a first-degree misdemeanor, alleged that Plaintiff fraudulently misrepresented herself as a Building Official and that her actions caused "developmental companies to change schedules, incur losses and remit fees."

59. The allegations were simply untrue as Plaintiff obtained her provisional building license on April 22, 2017 and because the Stop Work Order against the Palm Beach Cold Storage was signed by the CAP Government.

60. The Department of Business Professional Regulation issued an opinion letter acknowledging that Plaintiff had not committed any violations of the State of Florida Regulations. Despite this revelation, the SAO pursued charges against Plaintiff.

61. On or about July 2018, Plaintiff deemed approximately 50 units in Stonybrook Apartments, managed by Millennia Housing Management, unsafe. This was after a year of violations and a fire that injured several people, including a baby. Several of Defendant's council members did not agree and continue not to agree with Plaintiff's decision and continue to retaliate against her.

62.  To date, Defendant is pressuring Plaintiff to change her decision and/or opinion regarding Stonybrook.

## COUNT I: VIOLATION OF TITLE VII
## DISCRIMINATION BASED ON PLAINTIFF'S GENDER

63.  Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 62 of this Complaint.

64.  Plaintiff is a member of a protected class of female citizens.

65.  Plaintiff was and is qualified for any position of Building Officer.

66.  During the course of Plaintiff's employment with the Defendant, Plaintiff was and is being subjected to a discriminatory as more fully described in paragraphs 14-21, 24-27, 29-43, 49-62 of this Complaint.

67.  The offensive and discriminatory remarks and conduct referred to in paragraphs 14-21, 24-27, 29-43, 49-62 were offensive to Plaintiff and would be offensive to a reasonable person.

68.  Defendant was and is substantially motivated to engage in the offensive and discriminatory remarks and conduct referred to in paragraphs 14-21, 24-27, 29-43, and 49-62 because Plaintiff is a female.

69.  Similarly situated employees, who are male, including previous Building Officials (paragraphs 15-16) and other male employees employed with Defendant in similar level roles, were and are not being subjected to the same remarks and conduct directed towards Plaintiff.

70.  The Defendant's discriminatory behavior was part of a custom, pattern and practice of unlawful harassment and discrimination of higher-level employees who are female.

71.  As a direct and proximate result of the foregoing, Plaintiff has suffered and continued to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

72.  Plaintiff has suffered damages of an ongoing and continuous nature.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

   a. Enter judgment in Plaintiff's favor and against the Defendant for its violations of Title VII;

   b. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

   c. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

   d. Award Plaintiff prejudgment interest on her damages award;

   e. Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

   f. Award Plaintiff reasonable costs and attorney's fees; and

   g. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT II: VIOLATION OF TITLE VII
## HOSTILE WORK ENVIRONMENT BASED ON PLAINTIFF'S GENDER

73. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 62 of this Complaint.

74. Plaintiff is a member of a protected class of female citizens.

75. Plaintiff was and is qualified for the position of Building Officer.

76. During the course of Plaintiff's employment with the Defendant, Plaintiff was subjected to a discriminatory as more fully described in paragraphs 24-27, 30-43, 46, and 48-62 of this Complaint.

77. The unwelcome, offensive and discriminatory remarks and conduct referred to in paragraphs 24-27, 30-43, 46, and 48-62 were offensive to Plaintiff and would be offensive to a reasonable person.

78. The unwelcome, offensive and discriminatory remarks and conduct referred to in paragraphs 24-27, 30-43, 46, and 48-62 created a discriminatory and hostile working environment.

79. Defendant was and is substantially motivated to engage in the unwelcome, offensive and discriminatory remarks and conduct referred to in paragraphs 24-27, 30-43, 46, and 48-62 because Plaintiff is a female.

80. The unwelcome harassment was and is severe and pervasive, and has altered the terms and conditions of Plaintiff's employment.

81. Similarly situated employees, who are male, including previous Building Officials (paragraphs 15-16) and other male employees employed by Defendant, in similar level roles were and are not being subjected to the same conduct referred to in paragraphs 24-27, 30-43, 46, and 48-62 of this Complaint.

82. The Defendant's discriminatory behavior was part of a custom, pattern and practice of unlawful harassment and discrimination of employees who are female.

83. As a direct and proximate result of the foregoing, Plaintiff has suffered and continued to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

84. Plaintiff has suffered damages of an ongoing and continuous nature.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

    a. Enter judgment in Plaintiff's favor and against the Defendant for its violations of Title VII;

    b. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

    c. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

    d. Award Plaintiff prejudgment interest on her damages award;

    e.  Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

    f.  Award Plaintiff reasonable costs and attorney's fees; and

    g.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT III: VIOLATION OF TITLE VII
### RETALIATION

85.   Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 62 of this Complaint.

86.   At all relevant times, Plaintiff objected to the series of discriminatory and hostile actions taken against her, and which was substantially motivated by her gender, during her employment and as described in paragraphs 25, 35-48, and 51-62.

87.   Defendant's actions and its directions to other agencies to take actions against Plaintiff after her numerous complaints, including all formal complaints to Defendant and PBCOEO, were motivated by an intent to retaliate against Plaintiff for her protected activity under Title VII.

88.   Defendant maliciously and willfully violated Title VII or acted with reckless disregard for whether its actions were prohibited.

89.   As a direct and proximate result of the intentional violations by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

90.   Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Defendant for its violations of Title VII;

b. Award Plaintiff actual damages suffered, including lost wages, lost of fringe benefits and damages;

c. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has and continues to suffer;

d. Award Plaintiff liquidated damages based on Plaintiff's willful and/or reckless conduct;

f. Award Plaintiff's prejudgment interest on her damages award;

g. Award Plaintiff's reasonable costs and attorney's fees; and

h. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983
### BY THE COUNTY

91.  Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 62 of this Complaint.

92.  Pursuant to the Equal Protection Clause, Plaintiff has a constitutional right to be free from discrimination and retaliation.

93.  At all times necessary, Plaintiff is and was qualified to perform her duties as a Building Official.

94.  At all times relevant, Plaintiff was in a contractual relationship with the County.

95.  At all times relevant, the Defendant has the final authority to make decisions and/or adopt courses of action in response to Plaintiff's complaints.

96.  The Defendant had an unofficial custom and practice to retaliate against Plaintiff shown through repeated acts of undermining her decisions, discrediting her has a Building Official,

failing to provide her salary increase and supporting developers in their quest to devalue Plaintiff's reputation, as more fully described in paragraphs 13-62.

97.   The Defendant's unofficial custom and practice to retaliate was a long-standing practice which constituted a standing operating procedure for any employee who opposed its actions.

98.   At all times relevant, the Defendant failed to conduct a prompt, impartial, reasonable, reliable and thorough investigation of Plaintiff's complaints.

99.   The Defendant's leadership and officers authorized the actions taken against Plaintiff and ratified the actions against Plaintiff when they had knowledge of the actions described in paragraphs 13-62 and failed to stop it.

100. The Defendant is not entitled to immunity because it ratified the decisions made with regard to Plaintiff's employment and liability attaches to the County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Smart v. City of Miami*, No. 16-16740, 2018 U.S. App. LEXIS 17777, at *21-22 (11th Cir. June 28, 2018).

101. As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

   a.   Enter judgment in Plaintiff's favor and against the Defendant for its violations of 42 U.S.C.A. § 1983;

   b.   Award Plaintiff actual damages suffered;

   c.   Award Plaintiff compensatory damages under 42 U.S.C. § 1983 for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered;

   d.   Award Plaintiff punitive damages;

   e.   Award Plaintiff prejudgment interest on her damages award;

 f. Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

 g. Award Plaintiff reasonable costs and attorney's fees; and

 h. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT V: VIOLATION OF THE EQUAL PAY ACT

102. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 62 of this Complaint.

103. Defendant's acts or omissions resulting in unfairly paying Plaintiff a base salary lower than Peter Ringle, Gill Vetter, Kenneth Loihl, Alfred Newbold and other male employees employed by Defendant in similar roles, for the same job with the same required skill, effort, and responsibility, violated 29 U.S.C. §§ 206(d), 215(a)(2).

104. Defendant's unlawful actions were willful.

105. Defendant's acts or omissions resulting in its paying Plaintiff less base salary than it paid the individuals listed in paragraph 103 were neither in good faith nor did it have reasonable grounds for believing that its acts or omissions were not a violation of the EPA.

106. As a direct and proximate result of Defendant's violation of 29 U.S.C. §§ 206(d), 215(a)(2), Plaintiff suffered damages.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

 a. Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Defendant violated 29 U.S.C. §§ 206(d), 215(a)(2) when it discriminated against Plaintiff by paying her a base salary less than the base salary it pays male employees for a job that require substantially equal skill, effort, and responsibility, and are performed under similar working conditions;

 b. Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Defendant's violation of 29 U.S.C. §§ 206(d), 215(a)(2) was willful.

c. Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the Defendant's acts or omissions giving rise to its violation of 29 U.S.C. §§ 206(d), 215(a)(2) were not in good faith nor did Defendant have reasonable grounds for believing that its acts or omissions were not a violation of the EPA/ Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. 201 *et seq*;

d. Grant judgment requiring Defendant to pay Plaintiff back pay (from the date this action was filed) and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216 for its violation of 29 U.S.C. §§ 206(d), 215(a)(2);

e. Issue a permanent injunction, pursuant to 29 U.S.C. § 217, prohibiting Defendant, its board members, councilmen, administrators, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from paying women less than men for jobs that require substantially equal skill, effort, and responsibility, and are performed under similar working conditions in violation of 29 U.S.C. §§ 206(d), 215(a)(2);

f. Grant such other and further relief as this Court deems necessary and proper in the public interest; and

h. Award Plaintiff reasonable costs and attorney's fees.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.


Dated: September 20, 2018.

/s/ Ria N. Chattergoon__
**Ria N. Chattergoon, Esq.**
E-mail: ria@therclawgroup.com
RC Law Group
3900 Hollywood Boulevard, Suite 301
Hollywood, FL 33021
Telephone: (954) 400-1620
Facsimile: (954) 400-1676
*Counsel for Plaintiff*