UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-81285-CIV-DIMITROULEAS/MATTHEWMAN

LADI MARCH GOLDWIRE,

    Plaintiff,

v.

CITY OF RIVIERA BEACH,

    Defendant.

_____/

FILED BY _____ SW _____ D.C.

Dec 15, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u><br><u>ON PLAINTIFF'S MOTION FOR APPELLATE ATTORNEYS' FEES [DE 221]</u>

**THIS CAUSE** is before the Court upon Plaintiff Ladi March Goldwire's ("Plaintiff") Motion for Appellate Attorneys' Fees ("Motion") [DE 221].[1] The Honorable William P. Dimitrouleas, United States District Judge, referred the Motion to the undersigned United States Magistrate Judge. *See* DE 222. Defendant City of Riviera Beach, Florida ("Defendant" or "City") has filed a Response in Opposition [DE 223], and Plaintiff has filed a Reply [DE 224] and a Sur-Reply [DE 229]. Thus, the matter is now ripe for review. For the reasons that follow, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **GRANT IN PART AND DENY IN PART** Plaintiff's Motion [DE 221].

## I.    <u>BACKGROUND</u>

This case arises out of "alleged discrimination and retaliation Plaintiff experienced while working as a Building Officer for Defendant." [DE 101 at 1]. Specifically, Plaintiff brought six counts against Defendant: (1) violation of Title VII for discrimination based on Plaintiff's gender

---

[1] The Motion is contained within DE 220. However, in the interests of clarity, the Clerk of Court re-docketed the Motion as DE 221.

("Count I"); (2) violation of Title VII for a hostile work environment based on Plaintiff's gender ("Count II"); (3) violation of Title VII for retaliation ("Count III"); (4) violation of 42 U.S.C. § 1983 ("Count IV"); (5) violation of the Equal Pay Act ("Count V"); and (6) violation of the Florida Whistleblower's Act ("Count VI"). [DE 41].

Defendant filed a Motion for Summary Judgment [DE 65]. In the Court's ensuing Order on Motion for Summary Judgment [DE 101], the Court denied the motion as to Plaintiff's claims under Counts I, III, V, and VI, and granted the motion as to Plaintiff's claims under Counts II and IV. [DE 101 at 19]. The case thereafter proceeded to a six-day jury trial from August 9, 2021, to August 16, 2021. [DEs 140, 141, 143, 144, 147, and 148]. Ultimately, the jury rendered a verdict in favor of Plaintiff on her Title VII retaliation claim under count III, specifically finding that the City retaliated against Plaintiff by releasing her personnel file online, and awarded $60,000.00 to Plaintiff for her emotional pain and mental anguish. *See* DE 154. However, the jury found in favor of the City on all other Counts. *See* DE 154. Accordingly, on August 18, 2021, the Court entered Final Judgment in favor of Plaintiff and against the City in the amount of $60,000.00 plus post-judgment interest. [DE 156].

Plaintiff thereafter filed a Motion for Judgment Notwithstanding the Verdict or Alternatively, Motion for a New Trial [DE 165]. As part of that motion, Plaintiff sought "judgment notwithstanding the verdict or a new trial on her Equal Pay Act (Count V) and Florida Whistleblower Act (Count VI) claims." [DE 180 at 2]. The Court denied the motion as part of an Omnibus Order Denying Post-Trial Motions [DE 180].[2] Subsequently, Plaintiff filed a Motion for Attorneys' Fees and Costs [DE 183], which the Court later granted in part as part of a March 3, 2022 Order. *See* DE 207.

---

[2] The Omnibus Order was titled as such because it also disposed of Plaintiff's Motion for Front Pay [DE 166].

Importantly, Defendant appealed the Court's entry of Final Judgment "entered in favor of Plaintiff with respect to Plaintiff's Title VII retaliation claim." [DE 191]. And, Plaintiff cross-appealed "the verdict and judgment entered for Defendant . . . as to Count I – gender discrimination under Title VII; Count III – violation of Equal Pay Act; and Count IV – Violation of the Florida Whistleblower Act."[3] [DE 192]. Later, on January 17, 2023, the Eleventh Circuit Court of Appeals affirmed the Court's Final Judgment, issuing its mandate on March 3, 2023. *See* DE 219. The Eleventh Circuit then *sua sponte* transferred Plaintiff's Motion for Appellate Attorney's Fees to this Court "for its consideration of [Plaintiff's] entitlement to appellate attorney's fees and the reasonable amount of appellate attorney's fees, if any, to be awarded." [DE 220].

After the Eleventh Circuit transferred Plaintiff's Motion to this Court for disposition, Defendant filed a Memorandum in Opposition ("Response") [DE 223], and Plaintiff filed a Reply [DE 224].[4] However, in response to Plaintiff's Reply, Defendant then filed a Motion to Strike or Leave to File Sur-Reply [DE 225] because Plaintiff "improperly added new arguments and evidence." Plaintiff then filed a Response in Opposition [DE 226] to that motion, and Defendant filed a Reply [DE 227]. After the Motion to Strike or Leave to File Sur-Reply was subsequently referred to the Undersigned, the Undersigned issued an Order Granting in Part and Denying in Part the City's Motion to Strike or Leave to File Sur-Reply [DE 228]. Specifically, to the extent the motion requested that the Court "strike [Plaintiff's] exhibit and argument pertaining to the City's appellate counsel," the Court denied the motion, noting that it would "of course, determine what weight, if any, it will give Plaintiff's exhibit and argument." [DE 228 at 1]. But the Court granted the motion with respect to Defendant's request for leave to file a sur-reply. *Id.* at 1–2. In this regard,

---

[3] These counts appear to be misnumbered and should instead be Counts I, V, and VI.
[4] The Response had already been filed earlier, while the case was at the Eleventh Circuit. *See* DE 220 at 27–49. Defendant merely re-filed for clarity.

the Court allowed Defendant to file a "four (4) page sur-reply memorandum in further support of the City's Response in Opposition and in response to [Plaintiff's] Reply Memorandum." *Id.* at 1.

## II.   MOTION, RESPONSE, REPLY, AND SUR-REPLY

### A.   Plaintiff's Motion [DE 221]

In Plaintiff's Motion [DE 221], Plaintiff moves for an order awarding appellate attorneys' fees pursuant to 11th Cir. R. 39-2 and 42 U.S.C. § 1988. [DE 220 at 2]. Specifically, with respect to entitlement, Plaintiff argues that she "prevailed on her retaliation claims under Title VII in the District Court and was awarded attorneys' fees as the prevailing party in that action." *Id.* at 5. And, Plaintiff argues that the Eleventh Circuit's "affirmance of the lower court's verdict on appeal means that [Plaintiff] is also the prevailing party" on appeal. *Id.*

As to the reasonableness of an attorneys' fees award, Plaintiff notes that she has incurred $113,950.00 in appellate attorneys' fees, and has attached Affidavits and Billing Records in support. [DE 220 at 10–26]. In this regard, Plaintiff argues that the $500.00 hourly rates of Robin F. Hazel, Esq. (who has practiced as an appellate attorney for approximately 19 years) and Ria N. Chattergoon, Esq. (who has practiced employment law for approximately 18 years) are reasonable and appropriate in this case. *Id.* at 6. Moreover, Plaintiff argues that the time spent working on this appeal—157.6 hours for Ms. Hazel and 70.3 hours for Ms. Chattergoon—is also reasonable. *Id.* at 7.

### B.   Defendant's Response [DE 223]

Defendant begins by noting that "[a]t trial below, Plaintiff Goldwire prevailed only on a small part of her retaliation claim and the jury entered verdict in favor of the Defendant City on all other claims." [DE 223 at 8]. And, while Defendant appealed the jury's verdict as to the retaliation claim, Plaintiff "filed a cross-appeal alleging the jury erred in finding in favor of the City on her

equal pay act claim and her whistleblower claim." *Id.* That said, Defendant argues that Plaintiff's Motion fails to support the $500.00 hourly rate requested. *Id.* at 9–12. Moreover, because the Eleventh Circuit affirmed the verdict below "in all respects," Defendant argues that Plaintiff should not be allowed attorneys' fees for work expended on the unsuccessful cross-appeal. *Id.* at 13–15. Defendant additionally argues that Plaintiff's Motion requests attorneys' fees tied to duplicate and redundant time entries that are excessive and fail to identify the distinct contribution of each attorney, requests excessive billing entries tied to client and counsel conferences, and requests additional excessive billing entries which should be excluded. *Id.* at 15–19.

First, with respect to the hourly rate of Plaintiff's attorneys, Defendant notes that Plaintiff "does not include any direct or opinion evidence of the reasonable hourly rate in the Southern District of Florida – the relevant legal community for [Plaintiff's] counsel." *Id.* at 9–10. Thereafter, Defendant notes that in several cases from courts in this district mentioned in Plaintiff's fee application below (that is, the fee application filed prior to the case being appealed), the hourly rates for attorneys with more experience than Plaintiff's counsel were reduced to rates below those requested by Plaintiff's counsel. *Id.* at 10–11. Thus, Defendant argues that "[i]n looking at . . . comparable cases in the Southern District of Florida, [Plaintiff's] Counsel should be awarded fees at a rate no higher than $400 per hour." *Id.* at 12.

Second, as to Defendant's argument concerning Plaintiff's request for attorneys' fees tied to the unsuccessful cross-appeal, Defendant cites to *Maiden Specialty Ins. Co. v. Three Chefs & A Chicken, Inc.*, No. 12-22724-CIV, 2016 U.S. Dist. LEXIS 116552 (S.D. Fla. July 7, 2016), *report and recommendation adopted as modified*, 2016 U.S. Dist. LEXIS 115725 (S.D. Fla. Aug. 26, 2016), for the proposition that a party is not entitled to attorneys' fees "associated with an unrelated and unsuccessful cross-appeal." [DE 223 at 14] (quoting *Three Chefs*, 2016 U.S. Dist. LEXIS

116552, at *3). In this regard, Defendant argues that Plaintiff's fee application includes "time entries totaling at least 46.10 hours for work on [the] unsuccessful cross-appeal" which should be stricken. *Id.* And, Defendant further argues that the additional 16.10 hours included "for time entries wherein the description appears to commingle work on Plaintiff's Answer Brief and her Initial Cross-Appeal Brief" should be stricken as well. *Id.* at 14–15.

Third, with respect to Defendant's argument concerning the time expended, Defendant notes that "[i]n the instant case, both attorneys for [Plaintiff] did virtually everything together. Indeed, identical or nearly identical time entries reflected in [Plaintiff's] fee application total 90.40 hours." *Id.* at 16–17. Defendant also notes that "[i]n addition to the duplicate billing . . . for which [Plaintiff] failed to identify the unique contribution of each counsel for performing the same tasks, [Plaintiff] seeks and [sic] additional 32.80 hours for client and counsel conferences in which both attorneys participated." *Id.* at 18–19. According to Defendant, "the total for identical and nearly identical billing including conferences all amounting to double billing without depicting the unique contribution of each attorney is 123.20; Divided by two, a minimum of 61.60 is excessive and should be deducted from [Plaintiff's] fee award." *Id.* at 18. And finally, Defendant argues that given Plaintiff's counsel's experience, "it is difficult to justify certain time entries by counsel for routine matters and the billing is clearly excessive." *Id.* at 19. To this end, Defendant argues that Plaintiff has billed an additional 15.5 excessive hours. *Id.*

In summary, Defendant requests that the Court reduce Plaintiff's appellate counsel's hourly rate to $400.00 per hour and deduct a total of 155.7 hours (out of 227.9 total hours). *Id.* at 19. Notably, Defendant has attached an exhibit entitled "Additional Excessive Billing Entries" in support. *See id.* at 21–27.

**C.  <u>Plaintiff's Reply [DE 224]</u>**

In reply, Plaintiff preliminarily notes that Defendant does not challenge her entitlement to appellate attorneys' fees; "it only challenges the amount of those fees by challenging the hourly rate of her attorneys and the number of hours expended on the appeal." [DE 224 at 3]. That being said, first, as to Plaintiff's counsel's hourly rate, Plaintiff argues that "none of the cases relied on by the City to challenge the hourly rates involve an award of appellate attorneys' fees," while *First National Bank of Oneida, N.A. v. Brandt*, 201 WL 2856626 (M.D. Fla. July 8, 2021)—the sole case cited in Plaintiff's Motion as to that particular issue—addresses appellate attorneys' fees and supports the requested hourly rates. *Id.* at 3–4. Moreover, Plaintiff points to the purported hourly rate of Defendant's own appellate counsel (obtained through a public records request) to suggest the City's argument "that the customary hourly rate for appellate attorneys in this jurisdiction is $375 to $400 per hour" is disingenuous. *See id.* at 4–5.

Thereafter, as to Defendant's argument that the attorneys' fees tied to Plaintiff's cross-appeal should not be recoverable, Plaintiff distinguishes *Three Chefs* by arguing that in the instant case, "the cross-appeal was not unrelated" and "was a prominent feature of [Plaintiff's] Answer Brief." *Id.* at 5. In any event, to the extent Defendant identified 46.1 hours of time entries tied to the cross-appeal, Plaintiff contends that such an assertion is inaccurate and that "[t]he only time that the City can definitively argue was spent exclusively on the cross-appeal are those hours spent researching and drafting Plaintiff's Reply Brief on cross-appeal," which Plaintiff indicates amounts to 18.8 hours. *See id.* at 6. Plaintiff also notes that "Exhibit 1 to the City's Response also contains time entries, which it uses as examples of time spent on the cross-appeal, that do not match the contemporaneous time records submitted" by Plaintiff's appellate counsel. *Id.*

Further, Plaintiff addresses Defendant's argument that certain hours were redundant or excessive. *Id.* at 7–10. To this end, as to using two attorneys and having them bill identical or nearly identical hours, Plaintiff argues that it would be "negligent for either attorney to decline to review and [sic] order or pleading simply because the other has looked at the document." *Id.* at 7. And, for example, that it is "unclear if the City's suggestion is that one attorney should have read [an] email while the other ignored it." *Id.* at 8. Plaintiff also argues that "the claim that the contributions of each attorney were not identified is also inaccurate," as "[s]ome of the entries show one attorney preparing and drafting a document while the other attorney merely reviewed and revised the document."[5] *Id.*

Lastly, with respect to conferencing between Plaintiff and her counsel, Plaintiff argues that "[t]he City cannot dictate how [Plaintiff] should have defend [sic] the judgment or how often or for how long she needed to communicate with her counsel in a case that has been emotionally charged and traumatic for her, in addition to being extremely public and the source of aggressive media attention." *Id.* at 8–9. And finally, Plaintiff states that the City "noted approximately 15.5 hours that it arbitrarily deemed to be excessive." *Id.* at 9. Thus, "[b]ecause there is no basis for the City's determination that necessary tasks performed by counsel should not have been performed, this Court should not rely on the City's interpretation of which time constitutes excessive time." *Id.* at 9.

In sum, Plaintiff takes issue with Defendant's suggestion that 155.7 hours of the 227.9 total hours spent on the case should be disregarded. *Id.* at 10. According to Plaintiff, this is especially the case when "[a] public records request from the City reveal[ed] that [the City] paid invoices to

---

[5] According to Plaintiff "even if the City believes the billing to be excessive because entries were similar, the City has not cited any support for disregarding all of the hours entirely." *Id.* at 8. However, Defendant's argument is that the hours should at minimum be *halved*.

its appellate counsel totaling approximately $78,000.00 as of December 2, 2022, prior to the date

of the opinion in the case . . . [which] means that, based on the City's appellate counsel's billable

rate, the City spent at least 144 hours on this appeal as of December 2022." *Id.*

### D.  Defendant's Sur-Reply [DE 229]

According to Defendant City of Riviera Beach:

The City objected to certain information raised in [Plaintiff's] reply in support of
her motion for attorney's fees and sought leave to file a Sur-Reply. [DE 225].
Specifically, the City objected to the reference by [Plaintiff] to the City's attorneys'
fees which [Plaintiff] attempted to use to provide evidence regarding the reasonable
hourly rate sought by [Plaintiff's] counsel . . . and to justify the total number of
hours sought by [Plaintiff]. [Plaintiff] stated erroneous information regarding the
hourly rate for the City's attorneys, and then purported to calculate the total number
of hours for the City's attorneys using that faulty information, in an attempt to
justify [Plaintiff's] total hours sought.

[DE 229 at 1–2].

Defendant argues that the amount of its attorneys' fees is not relevant to Plaintiff's request

for attorneys' fees. *Id.* at 2. Indeed, "[Plaintiff's] speculation about the number of hours of the

City's appellate attorneys, having only total amounts billed (fees and costs) and using faulty

information regarding the City's hourly rates, in an attempt to justify the amount of [Plaintiff's]

hours, should be rejected." *Id.* at 3. In any event, Defendant points out that its counsel's rate on

this appeal was $450.00 per hour, and was never higher than such, contrary to Plaintiff's assertion.

*Id.* at 4.

### III.   DISCUSSION

### A.  Entitlement to Appellate Attorneys' Fees

While entitlement is not disputed in this case, the Undersigned nonetheless finds it prudent

to first establish Plaintiffs' entitlement to appellate attorneys' fees. Pursuant to 42 U.S.C. § 2000e-

5(k),[6] "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person" in a Title VII action. *Chacon v. Ezekiel*, 957 F. Supp. 1265 (S.D. Fla. 1997). This also includes appellate attorneys' fees, which are recoverable under 42 U.S.C. § 2000e-5(k). *Gilroy v. Baldwin*, No. 16-14521-CV, 2021 WL 6427476, at *2 (S.D. Fla. Dec. 15, 2021), *report and recommendation adopted*, No. 16-14521-CIV, 2022 WL 112221 (S.D. Fla. Jan. 12, 2022) (citing *Young v. New Process Steel, LP*, 419 F.3d 1201, 1204 (11th Cir. 2005)) (stating that appellate attorneys' fees are recoverable under section 1988); *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 846 n.10 (11th Cir. 1991) (stating that "Congress intended the standards for awarding fees" under 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) "to be the same").

42 U.S.C. § 2000e-5(k) is a fee-shifting statute. *Holmes v. City of Fort Pierce, Fla.*, No. 18-CV-14461, 2022 WL 14091465, at *4 (S.D. Fla. July 15, 2022) (citing section 2000e-5(k) and referring to it as a fee-shifting statute);[7] *cf. ACLU of Fla., Inc. (Greater Tampa Chapter) v. Polk County, Fla.*, No. 05CV02266, 2006 WL 2147716, at *2 (M.D. Fla. July 28, 2006) ("Congress enumerated § 1983 as a fee-shifting statute under which a court, in its discretion, may allow the 'prevailing party' a reasonable attorney's fee."). "[I]t is well established that a party need not

---

[6] While Plaintiff did not specifically move pursuant to 42 U.S.C. § 2000e-5(k) for fees before the appellate court, as noted in the Court's March 3, 2022 Order [DE 207], "this does not bar Plaintiff's fee recovery." [DE 207 at 1 n.1]. *See Gonzalez v. Scottsdale Ins. Co.*, No. 18-CV-23738, 2021 WL 849211, at *4 (S.D. Fla. Jan. 6, 2021) ("Plaintiff would be entitled to recover attorney's fees pursuant to [the relevant fees statute] regardless of whether that statute was referenced in his [or her] pleadings."). Moreover, Defendant did not raise this as an issue in its papers, so any possible argument on that issue has been waived by Defendant. Additionally, although the Court also previously addressed 42 U.S.C. § 1988(b) in its analysis when awarding attorneys' fees entitlement, Plaintiff's section 1983 claim was not at issue before the appellate court. Even assuming attorneys' fees under 42 U.S.C. § 1988(b) remained applicable, that section would merely serve as an additional basis for being entitled to appellate attorneys' fees.
[7] Judge Reinhart's report and recommendation in *Holmes v. City of Fort Pierce, Fla.* was not adopted because the parties filed an Amended Joint Notice of Settlement, thereby rendering the motions for attorneys' fees as moot. *See Holmes v. City of Fort Pierce, Fla.*, No. 18-14461-CIV, 2022 WL 14010862 (S.D. Fla. Oct. 24, 2022).

obtain relief on every claim or legal theory it propounds in order to be considered 'prevailing' under a fee-shifting statute." *Jean v. Nelson*, 863 F.2d 759, 766 (11th Cir. 1988). Instead, "[a] prevailing party is one who prevails on any significant issue and thereby achieves some of the benefits sought by bringing suit." *Garrido v. Sec'y, Fla. Agency for Health Care Admin.*, 658 F. App'x 973, 977 (11th Cir. 2016) (alteration and internal quotation marks omitted) (quoting *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012)).

Here, Plaintiff filed suit against Defendant City of Riviera Beach pursuant to Title VII (as codified at 42 U.S.C. § 2000e *et seq.*). *See* DE 41. Plaintiff thereafter prevailed on her claim for retaliation under Title VII and was awarded $60,000.00 for her emotional pain and mental anguish. *See* DE 154. Subsequently, on appeal, the Eleventh Circuit affirmed the trial court's entry of Final Judgment.

Accordingly, because Plaintiff therefore prevailed on a litigated cause of action and achieved some of the benefits of bringing suit (before both the trial and the appellate court), and because appellate attorneys' fees are recoverable under 42 U.S.C. § 2000e-5(k), the Undersigned **RECOMMENDS** that the District Judge find Plaintiff entitled to appellate attorneys' fees. Indeed, in the trial court's "Order Granting in Part Plaintiff's Motion for Attorneys' Fees and Costs" [DE 207], the trial court already found that Plaintiff was the prevailing party before the trial court because Plaintiff "successfully obtained Judgment as to Title VII retaliation, for which Defendant must pay $60,000.00." [DE 207 at 3]. As the prevailing party before the trial court who then prevailed on a litigated cause of action before the Eleventh Circuit, Plaintiff is entitled to appellate attorneys' fees.

**B. Reasonable Attorneys' Fees Amount**

    i.   Law Regarding Calculation of Attorneys' Fees

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See id.* at 427 (citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1350 n.2 (citation omitted). However, the Court may also use its own experience in assessing the reasonableness of attorneys' fees. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman*, 836 F.2d at 1299)). The fee applicant bears the burden of establishing the claimed market rate. *See id.* at 427. With regard to the type of evidence that the fee claimant should produce in support of a claim, in *Barnes*, the Eleventh Circuit has stated that

> [t]he "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id*. (citations omitted).

*Id.* at 427.

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Id.* at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See id.* (quoting *Norman*, 836 F.2d at 1301). The burden rests on the movant to submit a comprehensive request for fees so the court can determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782. "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So, trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

ii.  Counsel's Hourly Rate

Plaintiff is seeking a $500.00 hourly rate for Robin F. Hazel, Esq. [DE 220 at 11]. Ms. Hazel has been a member of the Florida Bar since 2004, has primarily practiced appellate work, has participated in over 130 appellate cases where an opinion was rendered, and has "been a Florida Super Lawyer Rising Star from 2012–2019 and a Florida Super Lawyer from 2020–2023." *Id.* Likewise, Plaintiff is seeking a $500.00 hourly rate for Ria. N. Chattergoon, Esq. [DE 220 at

20]. Ms. Chattergoon has been a licensed attorney since September of 2005, has "successfully litigated . . . over five hundred cases on behalf of employees," and has "been selected as a *Florida Rising Star* by the *Super Lawyers Magazine* in 2012 to 2018 and a Florida Super Lawyer from 2019 to 2022 for Labor and Employment Law." *Id.* at 19–21.

Here, the Court finds that a reduction in the hourly rates of both Ms. Hazel and Ms. Chattergoon—from $500.00 to $410.00—is appropriate in this case. Indeed, in the Court's March 3, 2022 Order Granting in Part Plaintiff's Motion for Attorneys' Fees and Costs [DE 207], the Court already found a reduction in both attorneys' requested hourly rate from $450.00 to $400.00 to be appropriate. [DE 207 at 3–4]. And, despite Plaintiff's encouragement, the Court declines to award a higher hourly rate simply because the case involves a request for *appellate* attorneys' fees (although the Court finds $410.00 more appropriate than $400.00 given the passage of time). Moreover, Ms. Hazel and Ms. Chattergoon have approximately twenty years of experience each. The Undersigned has previously awarded an attorney with approximately thirty years of experience an hourly rate of $455.00 in a section 1983 case involving appellate attorneys' fees. *See O'Laughlin v. Palm Beach County,* No. 19-80701-CIV, 2022 WL 16924182, at *11 (S.D. Fla. Oct. 26, 2022), *report and recommendation adopted*, No. 19-80701-CIV, 2022 WL 16921843 (S.D. Fla. Nov. 14, 2022). Thus, the Court finds a rate of $410.00 patently appropriate.[8]

iii.  Number of Hours Reasonably Expended

Plaintiff requests 157.6 hours attributable to Ms. Hazel, and 70.3 hours attributable to Ms. Chattergoon. [DE 220 at 18, 26]. Defendant objects for a number of reasons. Specifically, that: (1) Plaintiff should not be allowed attorneys' fees for work expended on an unsuccessful cross-appeal;

---

[8] In coming to this determination, the Court has given no weight to the purported hourly rates of the City's counsel. Rather, the Court has used its own independent experience, and recent case law in this district, in assessing the reasonableness of counsel's hourly rate. *See Norman*, 836 F.2d at 1299.

(2) Plaintiff's Motion requests attorneys' fees tied to duplicate and redundant time entries that are excessive and fail to identify the distinct contribution of each attorney; (3) Plaintiff's Motion requests excessive billing entries tied to client and counsel conferences; and (4) Plaintiff's Motion requests additional excessive billing entries which should be excluded. *Id.* at 13–19. The Court will address each of these arguments below.

###### a.   The Unsuccessful Cross-Appeal

If a party does not prevail on all issues, "the Court may attempt to identify specific hours spent in the unsuccessful litigation or simply reduce the award by some proportion of the lodestar fee." *Smith v. City of New Smyrna Beach*, No. 11-cv-1110-Orl-37KRS, 2015 WL 13738777, at *6 (M.D. Fla. Apr. 24, 2015), *report and recommendation adopted*, 2015 WL 13738776 (M.D. Fla. May 20, 2015) (citing *Norman*, 8366 F.2d at 1302). In fact, courts have reduced the lodestar to account for a plaintiff's unsuccessful cross-appeal. *See Truesdell v. Thomas*, No. 13-cv-552-Oc-10PRL, 2018 WL 6622882, at *7 (M.D. Fla. Nov. 27, 2018), *report and recommendation adopted*, 2019 WL 175279 (M.D. Fla. Jan. 11, 2019) (noting a plaintiff's unsuccessful cross-appeal and reducing the lodestar "to reflect the degree to which [the plaintiff] prevailed on fundamental features of her claim, as well as the fact that she was unsuccessful on appeal on issues that were not inconsequential"); *Maiden Specialty Ins. Co. v. Three Chefs & A Chicken, Inc.*, No. 12-22724-CIV, 2016 U.S. Dist. LEXIS 116552, at *3 (S.D. Fla. July 7, 2016), *report and recommendation adopted as modified*,[9] 2016 U.S. Dist. LEXIS 115725 (S.D. Fla. Aug. 26, 2016) (citing cases in which other Circuits declined to award appellate attorneys' fees attributable to an unsuccessful cross-appeal and finding that "[w]hile a plaintiff is entitled to fees for successfully defending a

---

[9] The Report & Recommendation was adopted as modified not because of a flaw in the legal analysis, but because of an erroneous calculation in the final dollar amount of attorneys' fees.

judgment [under section 627.428], he is not entitled to fees associated with an unrelated and unsuccessful cross-appeal").

Here, Plaintiff distinguishes *Three Chefs* by arguing that her cross-appeal was not "unrelated." Regardless of whether her cross-appeal is related or not—which the Court notes is a questionable assertion, as Plaintiff prevailed before the Eleventh Circuit on her Title VII retaliation claim but lost on her cross-appeal on matters pertaining to the Equal Pay Act and Florida's Whistleblower Act—the Court finds a reduction in the lodestar appropriate to reflect the lack of success on Plaintiff's cross-appeal. *See, e.g.*, *Three Chefs*, 2016 U.S. Dist. LEXIS 116552, at *3, and the cases cited therein. Indeed, while *Norman* does not reference appellate attorneys' fees or cross-appeals, *Norman* specifically provides that "[i]f the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Norman*, 836 F.2d at 1302.

In the instant case—and as stated earlier—Defendant argues that Plaintiff's "fee application includes time entries totaling at least 46.10 hours for work on [Plaintiff's] unsuccessful cross appeal." [DE 220 at 36]. Defendant also argues that Plaintiff's "fee application includes an additional 16.10 hours for time entries wherein the description appears to commingle work on [Plaintiff's] Answer Brief and her Initial [Cross-Appeal] Brief." *Id.* at 36–37. Plaintiff essentially responds that much of the time identified by Defendant is not attributable to the cross-appeal. *See* DE 224 at 5–6. Plaintiff also responds the only time Defendant "can definitively argue was spent exclusive on the cross-appeal are those hours spent researching and drafting [Plaintiff's] Reply Brief on cross-appeal," which Plaintiff calculates as 16.5 total hours. *Id.* at 6.

The problem with Plaintiff's argument, however, is that the Court cannot adequately parse the hours spent on briefing matters pertaining to retaliation from the hours spent on briefing matters pertaining to the unsuccessful Equal Pay Act and Florida Whistleblower's Act claims. As noted

by the United States Supreme Court, "there is no certain method of determining when claims are 'related' or 'unrelated.'" *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). And, "counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id.* In stating such, the United States Supreme Court thereafter cited to *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978), *abrogated on other grounds*, *Richardson v. Miller*, 279 F.3d 1 (1st Cir. 2002), noting that the court in that case stated it "would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spend on particular claims." *Id.* at 437 n.12. Consequently, the Court will account for Plaintiff's lack of success on the cross-appeal and for Plaintiff's failure to adequately attribute time between the appeal and cross-appeal in its billing records as part of the lodestar calculation.

b. Duplicate Attorney Time[10]

"Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed." *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-CIV, 2019 WL 4694147, at *4 (S.D. Fla. Aug. 27, 2019) (citing *Norman*, 836 F.2d at 1301). Further, the Eleventh Circuit recognizes that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302 (citing *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)). To recover time for multiple attorneys, the fee applicant bears the burden of showing that

---

[10] This section encompasses Defendant's objections as they pertain to Issues C and D of their Response.

the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Barnes*, 168 F.3d 423; *see also Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013) ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings.").

Here, Plaintiff's counsel's billing logs are filled with a number of entries involving Ms. Hazel and Ms. Chattergoon billing for identical or nearly identical tasks. For example, on March 31, 2022, both attorneys billed the same amount of time for "[r]eview[ing] and respond[ing] to email from mediator regarding confidential mediation statement." [DE 220 at 16, 24]. Likewise, the attorneys also often billed the same amount of time for reviewing the same filings, and drafted billing entries that were nearly identical and did not sufficiently identify the contribution of each attorney to the case. *Compare* DE 220 at 13–17, *with* DE 220 at 22–25; *see also* DE 223 at 23–25. Although the Court is cognizant that Ms. Hazel and Ms. Chattergoon are from different firms and that some of the time entries are therefore necessarily duplicative, there is little explanation for both attorneys billing, for example, for an email exchange to opposing counsel inquiring of opposing counsel's position on a motion for extension of time. *Compare* DE 220 at 14, *with* DE 220 at 23 (billing entries for exchanging emails with opposing counsel on February 4, 2022).

Moreover, Ms. Hazel and Ms. Chattergoon also frequently billed for conferencing with each other or with the client simultaneously. To this end, Plaintiff's appellate counsel has also not demonstrated the necessity of two attorneys discussing the case with each other or with the client simultaneously. *See, e.g.*, *Korman v. Iglesias*, No. 18-21028-CV, 2019 WL 2142521, at *5 (S.D. Fla. Apr. 4, 2019), *report and recommendation adopted*, No. 18-21028-CIV, 2019 WL 2141655 (S.D. Fla. Apr. 25, 2019) ("We will also exclude from the fee award the time billed by both

attorneys spent 'discussing' the case at hand."). Thus, the Court will also take these issues into consideration when calculating the lodestar amount.

   c.  <u>Additional Excessive Hours</u>

     As just stated, "[e]xcessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed." *Heron Dev. Corp*, 2019 WL 4694147, at *4.  Indeed, time entries for clerical or administrative tasks should be excluded. *See Thompson v. Branch Banking & Tr. Co.*, No. 19-CV-60108, 2020 WL 7061558, at *3 (S.D. Fla. Nov. 10, 2020), *report and recommendation adopted*, No. 19-CV-60108, 2020 WL 7059353 (S.D. Fla. Dec. 2, 2020), *appeal dismissed*, No. 21-10010-J, 2021 WL 1327212 (11th Cir. Feb. 5, 2021); *Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them.") (citing *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999)).

     Here, for example, Ms. Hazel billed 2.3 hours for preparing and filing a Certificate of Interested Persons and a Corporate Disclosure Statement. *See* DE 220 at 13. Ms. Chattergoon then spent .6 hours editing such. *See* DE 220 at 22. Additionally, Ms. Hazel billed 3.8 hours for preparing appendix labels and copies of the appendix to be mailed to the Court. *See* DE 220 at 16. These billing entries are either excessive or constitute clerical or administrative tasks and should be excluded. Accordingly, the Court will also take any excessive or clerical tasks into consideration when calculating the lodestar amount.

iv.    Calculation of Lodestar Amount

The Court has carefully considered the deficiencies in Plaintiff's counsel's billing records that: (1) bill for time related to the unsuccessful cross-appeal; (2) bill for duplicate and redundant time entries that fail to identify the distinct contribution of each attorney; (3) reflect excessive entries for client and counsel conferences; and (4) reflect additional excessive billing entries tied to routine or seemingly clerical work.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783); *Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2017 WL 4785458, at *1 (S.D. Fla. Oct. 20, 2017). Here, based upon all the facts, the Undersigned finds that an across-the-board reduction in hours is appropriate in this case to account for, *inter alia*, the unsuccessful cross-appeal, and the duplicate, excessive, and redundant nature of many of the billing entries. The Court will therefore reduce the lodestar by 50% for both Ms. Hazel and Ms. Chattergoon. Consequently, on behalf of Ms. Hazel, the attorneys' fee award is $32,308.00 (reflecting 157.6 hours at an hourly rate of $410.00, reduced by 50%). And, the attorneys' fee award for Ms. Chattergoon is $14,411.50 (reflecting 70.3 hours at an hourly rate of $410.00, reduced by 50%). This results in a total appellate attorneys' fee award of $46,719.50 to Plaintiff.

Stated differently, the Undersigned **FINDS** that a 50% reduction from the hours sought by both Ms. Hazel and Ms. Chattergoon is appropriate. Therefore, the Undersigned also **RECOMMENDS** that Plaintiff be awarded a *total* of $46,719.50 in appellate attorneys' fees (reflecting $32,308.00 for Ms. Hazel, and $14,411.50 for Ms. Chattergoon).

## IV.    CONCLUSION

In light of the foregoing, the Undersigned **RECOMMENDS** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** Plaintiff's Motion for Appellate Attorneys' Fees [DE 221]. Specifically, the Undersigned **RECOMMENDS** that the District Judge find Plaintiff entitled to prevailing party attorneys' fees under 42 U.S.C. § 2000e-5(k), award Plaintiff appellate attorneys' fees in the amount of $46,719.50 (reflecting $32,308.00 for Ms. Hazel, and $14,411.50 for Ms. Chattergoon), and enter a judgment against Defendant for such amount, applying the appropriate statutory interest.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge William P. Dimitrouleas. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of December, 2023.

WILLIAM MATTHEWMAN
United States Magistrate Judge